Curia, per Harper, Chancellor.
With respect to the first ground of appeal, admitting the correctness of the position taken on behalf of the defendant, that the court will refuse to enforce an agreement on the ground of inadequacy of price alone ; yet, I think, it cannot avail him in the present instance. The expression in some of the cases is, that the inadequacy must be so great as to be evidence of fraud, or that some unconscientious advantage was taken. But, I think, the circumstances rebut any such conclusion in the present case. Here was a man dealing with a woman, *107 when it was said by the defendant, “ that he did not think he was entitled to any part of his brother’s property, or ought not to take any part of it,” or words similar ; this does not indicíate any ignorance of his legal lights. The same witness states that he knew he was entitled to one-half of his brother’s property. He meant that he was not morally entitled; that he ought to allow his sister-in-law to retain the property she had been accustomed to enjoy along with her husband. Though his assignment of. his share of his estate, was in a legal sense founded on a valuable consideration, yet he intended a kind and liberal action. But this does not show an unconscientious advantage obtained over him — he is not to be relieved against the effect of his own generous or benevolent impulses ; and this, I believe, comprehends all that is necessary to be said with respect to the second ground of appeal. It is argued that if, as the Chancellor is understood to infer, the legal title was transferred by the mutual assignment, there is no ground of jurisdiction — the complainants might defend themselves at law ; but I certainly do not understand it to be decided by the case of Spann v. Jennings, that the party in possession of an estate which owes no debts, and to which he is solely entitled as distributee, has such a title as would be recognized by a court of law. The contrary is to be inferred from the quotation made by the chancellor. It is meant that the court will give it the effect of a legal title ; it will restrain all others from taking advantage of the want of legal title. Suppose the estate, being unindebted, both parties had joined in conveying it for a valuable consideration to a third person, and the defendant had then administered, and brought suit for the property, the court would have interfered to restrain him upon a double ground: 1st, to prevent circuity of action; to prevent the plaintiff from recovering in one jurisdiction that which the defendant would forthwith be entitled to receive back from him in another; and, next, because the plaintiff’s recovery against his own conveyance and assurance would have all the effect of fraud. The very same reasoning applies to the assignment of the defendant, whether we regard it merely as an agreement or as something to which this court will give all the effect of a legal title.
The ground principally relied upon is, that this was merely an *108 agreement, which was rescinded by the instrument’s being given up to be cancelled. Though.property once legally vested cannot be re-transferred without a conveyance, yet an agreement may be rescinded by parol or by an act significant of the intention, as by cancelling a bond or giving it up to be cancelled. I suppose this to be the doctrine of this court, and that a bond or covenant might be so released. The conclusion of the chancellor, that the assignment may have been put into the defendant’s hands for some other purpose than that of being cancelled, evidenced as it is by the circumstance that the defendant acquiesced so long in the possession of his sister-in-law, and never cancelled or gave up the assignment to himself, is one with which this court could hardly interfere. But I have taken a somewhat different view of the transaction, which the .chancellor, who heard the cause, concurs in regarding as a legitimate deduction from the circumstances. I think it was an offer to rescind, which offer does not sufficiently appear to have been accepted. The evidence is, that the complainant, Mrs. Fripp, and the defendant, were not on good terms. He had made a very kind and liberal arrangement with his sister-in-law, and with a very natural human infirmity, became after-wards discontented with his own generosity. He probably expressed this discontent, which gave occasion to pique and irritation on her part. This led her to question the propriety of her retaining the property, and to express her intention of giving it up, when she put the assignment into the hands of the defendant. I understand it to have been by way of saying, “ I put it in your own power to put an end to this arrangement if you think proper,” and this agrees precisely with the testimony that she afterwards “ rather hinted than said ” that the property was not hers ; she was apprehensive that the defendant might accept the offer she had made.
This was an offer to rescind, which I think he was bound to accept within a reasonable time, not only by cancelling the paper, delivered to him, but by cancelling or giving up the assignment to himself. Could it be tolerated in any other instance of an offer to make or to rescind a contract, that the party should wait two years, and then say, “ I accept your offer,” especially when there had occurred so material a change of circumstances as the marriage of the *109 complainants in the meantime ? It is said, that when several deeds are executed at the same time, in relation to the same matter, they constitute but one assurance or one agreement — 1 Fonb. B., 1 ch. 6, sec. xiv., Montague v. Tidcombe, 2 Vern., 518. The contract by which the complainant and defendant divided the property was one and entire. It was not contended at the hearing that the defendant was entitled to retain the whole estate of Isabel Fripp, and yet claim his proportion of the estate of William P. Fripp. This would not be like the case of giving up or cancelling a bond or covenant made for the benefit of one party ; it would be the making of a new agreement,' such as I certainly cannot suppose to have been contemplated by either party ; and yet could the complainant have maintained any action for her share of the estate of Isabel Fripp against the effect of her own assignment in the defendants’s hands? An agreement to bind must be mutual — an offer, to bind must be accepted. We have no evidence when the defendant cancelled the instrument in question, and it was for him to show this, he permitted the complainant to remain in possession of tlie property as her own for two years. He certainly did not give up or cancel the assignment to himself, and I cannot gather, even from his own answer, that he does not insist on retaining the advantage which that gave him, and still claiming his proportion of the estate of William P. Fripp.
De Treville, Solicitor for defendant.
The decree of the chancellor is affirmed.
Johnson, Johnston and Dünkin, Chancellors, concurred.